**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:21-cr-120-RCL** |
| **SCOTT KEVIN FAIRLAMB,** | |
| *Defendant.* | |

## MEMORANDUM OPINION

Defendant Scott Kevin Fairlamb claims the title of "first" in this Court in several respects: the first person to plead guilty to the charge of assaulting a police officer in connection with the attack against the United States Capitol on January 6, 2021, the first person to be sentenced for such conduct, and now, to the Court's knowledge, the first Capitol rioter to move to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] The government opposes Mr. Fairlamb's motion and urges the Court to summarily deny his claims as without merit.

Upon consideration of Mr. Fairlamb's motion, the government's opposition, the record therein, and the applicable law, the Court will **DENY** Mr. Fairlamb's Section 2255 motion.

## I.    BACKGROUND

On January 6, 2021, the Senate and House of Representatives assembled in a joint session to count electoral votes cast in the 2020 presidential election. *United States v. Fairlamb*, 535 F. Supp. 3d 30, 32 (D.D.C. 2021). That same day, Mr. Fairlamb traveled to Washington, D.C. to attend a rally organized to protest the election results. Statement of Offense, ECF No. 39, ¶ 10.

---

[1] *See* Spencer S. Hsu, *N.J. Gym Owner, Seattle Man Are First to Plead Guilty to Assaulting Police in Capitol Attack*, WASH. POST (Aug. 6, 2021, 4:38 PM), https://www.washingtonpost.com/local/legal-issues/first-guilty-pleas-police-assault/2021/08/06/c966ab9a-f6c3-11eb-9068-bf463c8c74de_story.html; Tom Jackman, *N.J. Man Sentenced to 41 Months for Assaulting Officer, Stiffest Punishment Yet in Jan. 6 Cases*, WASH. POST (Nov. 10, 2021, 1:23 PM), https://www.washingtonpost.com/dc-md-va/2021/11/10/rioter-fairlamb-sentenced-jan-6/.

At the conclusion of the rally, Mr. Fairlamb and other rioters traveled to the Capitol to prevent Congress from certifying the results. *Id.* ¶¶ 10, 15. Upon arriving at the Capitol, Mr. Fairlamb scaled scaffolding on the building's west side. *Id.* ¶ 11. While perched atop the scaffolding, he recorded—and posted to his social media account—a video of himself shouting "We ain't fucking leavin'!" *Id.* After that, Mr. Fairlamb crossed police barricades that had been overturned by other rioters just eighteen seconds earlier. *Id.* ¶ 12; *Fairlamb*, 535 F. Supp. 3d at 33. Mr. Fairlamb then picked up a police baton that had fallen in the fray. Statement of Offense ¶ 12. While holding the baton, Mr. Fairlamb again recorded—and posted to another of his social media accounts—a video of himself loudly boasting, "What [do] Patriots do? We fucking disarm them and then we storm the fucking Capitol." *Id.* Around 2:15 pm, after the Senate Wing Door had been forced open by rioters, Mr. Fairlamb entered the Capitol, still carrying the police baton. *Id.* ¶ 13. Some time later, Mr. Fairlamb left the building. *Id.* ¶ 14.

Once outside the Capitol, he chased a group of D.C. Metropolitan Police Department ("MPD") officers who, along with the overwhelmed Capitol Police, were responding to the riot. *Id.* Mr. Fairlamb screamed at the officers, "Are you an American? Act like one! . . . You guys have no idea what the fuck you're doing!" *Id.* When Mr. Fairlamb caught up with the line of MPD officers, he isolated Officer Z.B. *Id.* When Officer Z.B. attempted to rejoin the other officers, Mr. Fairlamb shoved and punched Officer Z.B. in his face shield. *Id.* Other rioters attempted to calm Mr. Fairlamb down. *Fairlamb*, 535 F. Supp. 3d at 36. Mr. Fairlamb admitted that he "unlawfully entered the Capitol building, armed with a police baton" "and assaulted Officer Z.B. with the purpose of influencing, affecting, and retaliating against the conduct of government by stopping or delaying the Congressional proceeding by intimidation or coercion." Statement of Offense ¶ 15.

On January 21, 2021—just two weeks after the riot—the government filed a criminal complaint against Mr. Fairlamb, alleging that his actions on January 6 violated various federal laws. *See* ECF No. 1. In April 2021, a grand jury returned a superseding indictment against Mr. Fairlamb charging him with twelve counts including, as relevant here, obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count Two) and assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1) (Count Three). *See* Superseding Indictment, ECF No. 23. In August 2021, Mr. Fairlamb pleaded guilty to Counts Two and Three in exchange for the government's dismissal of the other charges. *See* Minute Entry (08/06/2021).

Mr. Fairlamb and the government executed and signed a written plea agreement. Plea Agreement, ECF No. 38. Mr. Fairlamb was represented by Mr. Harley Breite ("plea counsel"). *See id.* at 11. In the plea agreement, Mr. Fairlamb agreed that he was pleading guilty to Counts Two and Three because he was "in fact guilty." *Id.* at 11. In so doing, Mr. Fairlamb averred that the Statement of the Offense "fairly and accurately describe[d] [his] actions and involvement" in the offenses. *Id.* ¶ 3. Mr. Fairlamb also agreed that he had "read every page of [the] Agreement," "discussed it with [his] attorney," and "fully underst[ood the] Agreement and agree[d] to it without reservation." *Id.* at 11.

The plea agreement contained—and Mr. Fairlamb assented to—several provisions regarding sentencing. As relevant here, Mr. Fairlamb agreed that his sentence would be "determined by the Court, pursuant to the factors sector forth in 18 U.S.C. § 3553(a), including a consideration of the Sentencing Guidelines," *id.* ¶ 5(A) and that he understood "that the sentence to be imposed is a matter solely within the discretion of the Court." *Id.* ¶ 8. He further agreed to the government's estimated offense level calculations under the Guidelines. *Id.* ¶ 5(A). Specifically, he agreed that the estimated offense level for Count Two was 25, representing the

base offense level (14) plus enhancements for property damage (8) and substantial interference (3). *See id.* The estimated offense level for Count Three was 20, representing the base offense level (14) plus an enhancement because the victim, MPD Officer Z.B., was a government officer (6). *See id.* Mr. Fairlamb further agreed that, pursuant to the Guidelines, Counts Two and Three should group and that the Count Two offense level would control after grouping. *See id.* (citing U.S. Sent'g Guidelines Manual, ch. 3, Part D, § 3D1.2 (U.S. Sent'g Comm'n 2021)). The estimated Count Two offense level of 25, minus reductions for acceptance of responsibility (2) and assistance to authorities (1), rendered an estimated total offense level of 22. *See id.* Accordingly, Mr. Fairlamb agreed that, considering an estimated total offense level of 22 and criminal history category of I, *see id.* ¶ 5(B), the estimated Sentencing Guidelines range was 41 and 51 months' incarceration.[2] *See id.* ¶ 5(C).

In the plea agreement, Mr. Fairlamb further agreed that "[n]o agreements, promises, understandings, or representations have been made by the parties *or their counsel* other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by [Mr. Fairlamb], defense counsel, and an Assistant United States Attorney for the District of Columbia." *Id.* ¶ 13 (emphasis added). On the signature page, Mr. Fairlamb "reaffirm[ed] that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Agreement." *Id.* at 11. Lastly, he attested that he was "satisfied with the legal services provided by [his] attorney in connection with [the]

---

[2] He further concurred with the government's estimated monetary penalties, including a fine range of $15,000 to $150,000, Plea Agreement ¶ 5(C), a special assessment of $100 each for his convictions, *id.* ¶ 12, and restitution in the amount of $2,000, *id.* ¶ 12.

Agreement and the matters related to it." *Id.* Mr. Fairlamb reiterated his satisfaction with plea counsel to this Court during the plea hearing. *See* Plea Hr'g Tr., ECF No. 71, at 3:15–17.

The Probation Office submitted a draft presentence report ("PSR") in preparation for sentencing. *See* ECF No. 46. In that report, the Probation Office calculated Mr. Fairlamb's total offense level to be 28 after applying a six-point enhancement for an official victim. *See* Draft PSR ¶ 44. The government objected to this enhancement, noting that it only applied to Count Three and, because the applicable offense level after grouping was Count Two, the enhancement should not be applied. *See* Gov't Receipt and Acknowledgment, ECF No. 56; Gov't Opp'n, ECF No. 70, at 5. The final PSR included a three-point enhancement for an official victim. *See* Final PSR, ECF No. 48, at ¶ 44. Plea counsel did not object to the draft or final PSR.[3] *See* Def.'s Mot., ECF No. 65, at 6; Gov't Opp'n at 5. However, the sentencing memoranda submitted by both Mr. Fairlamb and the government reflect the parties' consistent understanding that the victim enhancement should not apply. *See* Def.'s Sent'g Mem., ECF No. 54, at 2–3; Gov't Sent'g Mem., ECF No. 50, at 27–28.

On November 10, 2021, this Court sentenced Mr. Fairlamb. *See* Minute Entry (11/10/2021). In calculating the applicable sentence, the Court agreed with the Guidelines calculations as outlined by the parties in the plea agreement and calculated a total offense level of 22. Statement of Reasons, ECF No. 58, at 1. In so doing, the Court expressly agreed with both the government and plea counsel that the official victim enhancement applied by the Probation Office did not apply after grouping Counts Two and Three. *Id.* at 4. The Court then sentenced

---

[3] However, in his receipt and acknowledgment of the PSR, dated the date of sentencing, plea counsel noted an objection to the "3 [point] enhancement." Def.'s Receipt and Acknowledgment, ECF No. 55. It is unclear if this objection refers to the correctly calculated substantial interference enhancement or the incorrectly calculated victim enhancement.

Mr. Fairlamb to "41 months' incarceration to be served concurrently" as to Counts Two and Three,

the bottom of the Guidelines range, "with credit for time served."[4] *See* J., ECF No. 57, at 2.

On November 24, 2021, Mr. Fairlamb appealed his conviction.  Notice of Appeal, ECF

No. 61.  In early January 2022, Mr. Fairlamb moved to withdraw his appeal.  Mot. to Withdraw,

ECF No. 63.  In late March 2022, the Circuit issued the mandate dismissing his appeal.  Mandate,

ECF No. 64.

In September 2022, Mr. Fairlamb, through counsel, moved to vacate, set aside, or correct

his sentence under 28 U.S.C. § 2255, claiming ineffective assistance of his plea counsel.  Def.'s

Mot. at 1.  The government opposed, insisting that Mr. Fairlamb has not met his burden to establish

that he is entitled to collateral relief.  Gov't Opp'n at 1.  Mr. Fairlamb did not submit a reply.

## II.      LEGAL STANDARDS

### A.  28 U.S.C. § 2255

A prisoner may move to vacate, set aside, or correct his sentence if (1) the sentence was

imposed "in violation of the Constitution or laws of the United States"; (2) the court lacked

jurisdiction to impose the sentence; (3) the sentence "was in excess of the maximum authorized

by law"; or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  The

prisoner bears the burden to prove his right to relief by a preponderance of the evidence.  *United

States v. Baugham*, 941 F. Supp. 2d 109, 112 (D.D.C. 2012).  A court need not hold an evidentiary

hearing when "the motion and the files and records of the case conclusively show the prisoner is

entitled to no relief."  28 U.S.C. § 2255(b).

---

[4] The Court also sentenced Mr. Fairlamb to 36 months of supervised release, a special assessment of $200, and restitution in the amount of $2,000. *See* J., ECF No. 57, at 3, 7.

**B.  Cause and Prejudice**

"It is well established in the federal circuits that a federal prisoner cannot raise collaterally any issue litigated and adjudicated on a direct appeal from his conviction, absent an intervening change in the law." *Garris v. Lindsay*, 794 F.2d 722, 726 (D.C. Cir. 1986) (per curiam) (internal citations omitted).    Claims that were not raised on direct review will be considered in a Section 2255 motion only if the petitioner can demonstrate "cause" and "prejudice." *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). Cause may be shown where a claim is "so novel that its legal basis is not reasonably available to counsel," but "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 622–23 (internal quotations and citations omitted).    To establish prejudice when a defendant pleaded guilty, he must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Smoot*, 918 F.3d 163, 169 (D.C. Cir. 2019) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

**C.  Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a petitioner "must prove both incompetence and prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  Specifically, the petitioner must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  That sets a high bar, as a court's evaluation of counsel's actions "must be highly deferential," and is assessed under the circumstances present at the time of representation without the benefit of hindsight. *Id.* at 689.

Furthermore, a "reasonable probability" under *Strickland*'s second prong is one that is "sufficient to undermine confidence in the outcome." *Id.* at 694.  To establish prejudice, the petitioner must show there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotations and modifications omitted).   An ineffective assistance of counsel claim is defeated if the defendant fails to demonstrate either prong. *Strickland*, 466 U.S. at 700.

## III.   DISCUSSION

Mr. Fairlamb collaterally challenges the constitutionality of his conviction by arguing that his plea counsel was defective in three main ways: (1) failing to file a motion to dismiss Count Two, Def.'s Mot. at 3–4; (2) misleading Mr. Fairlamb regarding his possible sentence, *see id.* at 4–6; and (3) failing to file objections to the PSR, *see id.* at 6–7.  The government argues that all of Mr. Fairlamb's claims are meritless.  Gov't Opp'n at 1.  This Court agrees.

Even if Mr. Fairlamb's claims about his plea counsel's performance are true, and even if these missteps established deficient performance, Mr. Fairlamb cannot show that he was prejudiced in pleading guilty rather than going to trial.  As the Court remarked during sentencing, the video evidence against Mr. Fairlamb, standing alone, was overwhelming.  *See* Sent'g Tr., ECF No. 72, at 36:10–12 ("[H]ad you gone to trial I don't think there's any jury that could have acquitted you or would have acquitted you"); *id.* at 36:13–14 ("[Y]ou certainly made the right decision, you and your attorney[,] to plead guilty"); *id.* at 37:20–21 ("[Y]ou couldn't have beat this if you went to trial on the evidence I saw").  Given these facts, "[i]t is highly improbable" that Mr. Fairlamb would have declined to plead guilty and instead proceed to trial.  *United States v. Thomas*, 999 F.3d 723, 738 (D.C. Cir. 2021).  Furthermore, had Mr. Fairlamb opted for trial, he would have faced a possible sentence at least four times longer than the one he received by

pleading guilty. A defendant cannot establish prejudice under these circumstances. *See United States v. Ayers*, 938 F. Supp. 2d 108, 115 (D.D.C. 2013).

Aside from the inability to demonstrate prejudice, Mr. Fairlamb's arguments are not supported by law, contradicted by the record—or both. The Court will go on to explain why.

### A. Mr. Fairlamb's Claims Are Timely

As a threshold matter, Mr. Fairlamb's claims are not time-barred. Under the Anti-Terrorism and Effective Death Penalty Act, a defendant must bring any Section 2255 claims within one year of when the "judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). If a defendant does not appeal his conviction, the judgment of conviction becomes final fourteen days after entry of the judgment. *See* FED. R. APP. P. 4(b)(1); *United States v. Booker*, 564 F. Supp. 2d 7, 12 (D.D.C. 2008). Mr. Fairlamb did not appeal his sentence and thus his conviction became final on November 24, 2021.[5] Because Mr. Fairlamb filed his motion within one year after his conviction became final, his motion is timely.

### B. Mr. Fairlamb's Section 1512(c)(2) Argument Is Without Merit

Mr. Fairlamb first argues that his plea counsel was ineffective because counsel did not move to dismiss Count Two, obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). Def.'s Mot. at 3–4. That statute, in relevant part, states:

(c) Whoever corruptly—

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than

---

[5] Mr. Fairlamb filed a notice of appeal but later moved to withdraw his appeal because "an appeal of his sentence is no longer necessary." Mot. to Withdraw. The Circuit construed Mr. Fairlamb's motion as a motion for voluntary dismissal and granted Mr. Fairlamb's motion and dismissed his appeal. *See* Mandate. Because Mr. Fairlamb did not pursue an appeal of his sentence, the Court considers Mr. Fairlamb as not having appealed his conviction.

20 years, or both.

18 U.S.C. § 1512(c).

Mr. Fairlamb argues that his plea counsel should have moved to dismiss Count Two—a "desire" Mr. Fairlamb claims he "repeatedly addressed" with his plea counsel but counsel "ignored"—because his alleged conduct fell outside of Section 1512(c)(2). *Id.* at 4. According to Mr. Fairlamb, the word "otherwise" in Section 1512(c)(2) must be read in the context of, and is limited by, the activities listed in Section 1512(c)(1). *Id.* at 3–4. Thus, his conduct of "entering and remaining in the United States Capitol without authority" did not involve the alteration, destruction, mutilation or concealment of "a record, document, or other object" and therefore did not fall within the scope of the statute. *Id.* at 4 (citing Superseding Indictment at 2). In support, Mr. Fairlamb cites *United States v. Miller*, 589 F. Supp. 3d 60 (D.D.C. 2022), where the court held that Section 1512(c)(2) did not apply to the rioters' conduct on January 6, 2021 and granted a motion to dismiss that count. *Id.* The government vigorously rejects Mr. Fairlamb's argument. Gov't Opp'n at 10–13. This Court concurs with the government that "[t]his argument is unavailing." *Id.* at 10.

With regard to the first *Strickland* prong—deficient performance—there are several reasons why Mr. Fairlamb has failed to demonstrate that his plea counsel's decision not to move to dismiss Count Two was unconstitutionally deficient performance. As this Court has previously remarked, "[p]lenty of ink has been spilled in this district denying motions" challenging the application of Section 1512(c)(2) to offenses related to January 6, 2021. *See United States v. Bingert*, No. 21-cr-91 (RCL), __ F. Supp. 3d __, 2022 WL 1659163, at *2 (D.D.C. May 25, 2022). *Miller*, decided nearly four months after Mr. Fairlamb's sentencing and more than eight months after he pleaded guilty, was—and remains—the only decision from a court in this District

supporting Mr. Fairlamb's interpretation of the statute.[6] Thus, at the time of Mr. Fairlamb's plea

and sentencing, it was quite reasonable for plea counsel to elect not to move to dismiss Count Two

based on a novel statutory interpretation argument and instead negotiate a plea deal to secure a

more favorable end to Mr. Fairlamb's prosecution. *See Strickland*, 466 U.S. at 690. It is well-

settled that courts reviewing motions filed pursuant to 28 U.S.C. § 2255 "will not second guess

reasonable tactical choices by defense counsel" and the Court declines to do so here. *See United

States v. Catlett*, 97 F.3d 565, 571 (D.C. Cir. 1996). Also, counsel does not perform deficiently

"by declining to pursue a losing argument." *Johnson v. Wilson*, 960 F.3d 648, 656 (D.C. Cir.

2020) (quoting *United States v. Watson*, 717 F.3d 196, 198 (D.C. Cir. 2013)). In *Bingert*, decided

in May 2022, this Court examined the very issue Mr. Fairlamb raises and respectfully disagreed

with the *Miller* court's interpretation of Section 1512(c)(2), holding that the case's "narrow

interpretation strains the statute beyond its ordinary meaning." *See* 2022 WL 1659163, at *7.

While Mr. Fairlamb's plea counsel may have chosen not to pursue that particularly creative *Miller*-

esque argument prior to entering into the plea agreement, such a fault is not enough to establish

---

[6] Compare *Miller*, 589 F. Supp. 3d at 79 (statute ambiguous as to whether Section 1512(c)(2) prohibits obstruction regardless of connection to documentary or tangible evidence and the Court resolves the ambiguity in favor of the defendant), *with United States v. Sandlin*, 575 F. Supp. 3d 16, 24–30 (D.D.C. 2021) (Section 1512(c)(2) does not limit obstruction to documentary or tangible evidence), *United States v. Caldwell*, 581 F. Supp. 3d 1, 20–32 (D.D.C. 2021) (same), *United States v. Mostofsky*, 579 F. Supp. 3d 9, 26–27 (D.D.C. 2021) (same), *United States v. Montgomery*, 578 F. Supp. 3d 54, 69–79 (D.D.C. 2021) (same), *United States v. Nordean*, 579 F. Supp. 3d 28, 43–46 (D.D.C. 2021) (same), *United States v. McHugh*, 583 F. Supp. 3d 1, 20–23 (D.D.C. 2022) (same), *United States v. Grider*, 585 F. Supp. 3d 21, 29–31 (D.D.C. 2022) (same), *United States v. Bozell*, Case No. 21-cr-216 (JDB), 2022 WL 474144, at *6 (D.D.C. Feb. 16, 2022) (same), *United States v. Robertson*, 588 F. Supp. 3d 114, 121–22 (D.D.C. 2022) (same), *United States v. Andries*, Case No. 21-cr-93 (RC), 2022 WL 768684, at *9 (D.D.C. Mar. 14, 2022) (same), *United States v. Puma*, 596 F. Supp. 3d 90, 106–08 (D.D.C. 2022) (same), *United States v. McHugh*, Case No. 21-cr-453 (JDB), 2022 WL 1302880, at *4–7 (D.D.C. May 2, 2022) (same), *United States v. Reffitt*, No. 21-cr-32 (DLF), __ F. Supp 3d. __, 2022 WL 1404247, at *7–10 (D.D.C. May 4, 2022) (same), *Bingert*, 2022 WL 1659163, *7–11 (same), *United States v. Fitzsimons*, Case No. 21-cr-158 (RC),___F. Supp 3d.__, 2022 WL 1698063, at *6–12 (D.D.C. May 26, 2022) (same), *United States v. Williams*, Case No. 21-cr-0618 (ABJ), 2022 WL 2237301, at *17 n.13 (D.D.C. June 22, 2022) (same), *and United States v. Rhodes*, Case No. 22-cr-15 (APM), __ F. Supp 3d. __, 2022 WL 2315554, at *13–14 (D.D.C. June 28, 2022) (same).

deficient performance. *See Strickland*, 466 U.S. at 689.  Indeed, not pursuing such an argument was well within the range of tactical choices available to Mr. Fairlamb's plea counsel.

Even if Mr. Fairlamb could establish deficient performance, he has not shown that he suffered any prejudice, let alone a "substantial" "likelihood of a different result." *Pinholster*, 563 U.S. at 189.  Mr. Fairlamb claims that had counsel "filed a motion to dismiss Count Two of the Superseding Indictment, Mr. Fairlamb would have likely prevailed, and he would not have pleaded guilty to this Count." Def.'s Mot. at 4.  This assertion is patently contradicted by actual events. Had Mr. Fairlamb's plea counsel raised a *Miller* argument, he would *not* have prevailed—in fact, this Court would have rejected it, as the Court did in *Bingert*.  Therefore, because this Court would not have granted a motion to dismiss Count Two, that count, along with the eleven other charges in the superseding indictment, would have remained pending against him.

Mr. Fairlamb has not met his burden to demonstrate ineffective assistance of counsel with respect to plea counsel's decision not to move to dismiss Count Two.

### C.  Mr. Fairlamb's Argument That Plea Counsel Misled Him Is Without Merit

Mr. Fairlamb next argues that his plea agreement was not knowing, voluntary or intelligent "because it was induced by promises from his previous counsel that he would receive a sentence no longer than 12 months." *Id.* at 4–5.  Mr. Fairlamb claims that plea counsel advised him that: (1) speaking to the U.S. House Select Committee on the January 6 Attack would result in a reduced sentence; (2) "answer[ing] the Court's [Rule 11] questions affirmatively, regardless of the truth" would result in "a lighter sentence"; and (3) pleading guilty would enable Mr. Fairlamb to be transferred from the D.C. Jail, where he was detained pending trial, "within one week," when he actually remained there for "82 days." *Id.* at 5.  Finally, Mr. Fairlamb insists that his counsel did not share discovery materials with him, particularly "several videos" that he claimed he saw for

the first time after he signed the plea agreement. *Id.* at 6. The videos show "Mr. Fairlamb rendering assistance to four Capitol police officers" after exiting the Capitol on January 6 and before his confrontation with Officer Z.B. *Id.*

Mr. Fairlamb's allegations of plea counsel's misleading statements fail both of the required *Strickland* showings. It is well-settled that "a lawyer who advises his client whether to accept a plea offer falls below the threshold of reasonable performance if the lawyer makes a plainly incorrect estimate of the likely sentence due to ignorance of applicable law of which he should have been aware." *United States v. Booze*, 293 F.3d 516, 518 (D.C. Cir. 2002) (internal citation and quotations omitted). Even if it is true that plea counsel estimated Mr. Fairlamb's sentence to be one year, it is not clear that this was "plainly incorrect," especially given Mr. Fairlamb's early acceptance of responsibility and cooperation with the government's investigation, among other factors. *See United States v. Hanson*, 339 F.3d 983, 991 (D.C. Cir. 2003). And, again assuming that Mr. Fairlamb's claims are true, he has not demonstrated—and could not demonstrate— prejudice on this point. Mr. Fairlamb failed to argue that he would have rejected the plea agreement and gone to trial absent the alleged misstatements. Therefore, his motion fails on this basis. *See Hill*, 474 U.S. at 59. In addition, had he gone to trial, there is no "reasonable probability" that the outcome would have been different, especially given the overwhelming video evidence against him. *See* Sent'g Tr. at 36:10–12; 37:20–21; *Strickland*, 466 U.S. at 694. Therefore, Mr. Fairlamb has not established deficient performance or prejudice.

Moreover, Mr. Fairlamb's assertions regarding plea counsel's allegedly deficient performance are belied by his own statements and actions before this Court. Most importantly, in the written plea agreement, Mr. Fairlamb agreed that "[n]o agreements, promises, understandings, or representations have been made by the parties *or their counsel* other than those contained" in

the agreement. Plea Agreement ¶ 13 (emphasis added). On the signature page, Mr. Fairlamb "reaffirm[ed] that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with [his] decision to plead guilty except those set forth in this Agreement." *Id.* at 11. During the plea hearing, the undersigned repeatedly advised Mr. Fairlamb that no one, not even the Court, could predict the sentence he would receive, and Mr. Fairlamb repeatedly acknowledged that he understood that fact. Plea Hr'g Tr. at 6:24–7:14; 9:2–12.

Mr. Fairlamb's insistence that plea counsel advised him to speak to the U.S. House Select Committee and "to answer the Court's questions affirmatively, regardless of the truth" to receive a lighter sentence are similarly contradicted by the record. Regarding the Committee, Mr. Fairlamb agreed to speak with the Committee even though he "was advised that the United States Attorney's Office would take no position on his cooperation with the Committee and [would] not offer him any [sentencing] credit."[7] Sent'g Tr. at 25:7–14. In reference to the Court's Rule 11 inquiry, Mr. Fairlamb stated he "truly regret[ted]" his actions on January 6 and "ha[d] nothing but remorse." *Id.* at 35:17–18. In fact, this Court found "that the expression of remorse" Mr. Fairlamb demonstrated during sentencing was "sincere." *Id.* at 36:14–16. Mr. Fairlamb's behavior thus showed far more than mere affirmative answers to the Court's questions.

Mr. Fairlamb's dissatisfaction about plea counsel's efforts to secure his transfer from the D.C. Jail are similarly unavailing. At sentencing, plea counsel spoke extensively of the jail's poor treatment of Mr. Fairlamb and implored that he be "expeditiously removed from the D.C. Jail." *See id.* at 22:20–25:24; 44:5–8. The Court agreed that Mr. Fairlamb should be transferred to a different facility and stated that the Court would submit the necessary paperwork "so that [Mr.

---

[7] It is unclear if a meeting between Mr. Fairlamb and the U.S. House Select Committee ever took place. During sentencing, plea counsel stated that the D.C. Jail declined to grant the Committee permission to conduct the interview. Sent'g Tr. at 25:15–18.

Fairlamb] can be moved promptly." *Id.* at 44:9–11. Plea counsel may have underestimated the amount of time a transfer would take, but such a miscalculation does not undermine the Court's confidence in the validity of Mr. Fairlamb's plea. *See Strickland*, 466 U.S. at 694.

Finally, Mr. Fairlamb generally claims that his plea counsel never shared "any" discovery with him and specifically faults plea counsel for not sharing with him "several videos" prior to a debrief with the government. As with his previous arguments, even if it is true that Mr. Fairlamb did not receive any discovery or that he was unaware of videos showing him in a favorable light, he does not explain how—or if—his decision to plead guilty would have been affected by the evidence, especially when "[h]is crimes [we]re documented through a series of videos provided to the FBI by various concerned citizens, body worn camera from the Metropolitan Police Department, and surveillance footage from inside of the Capitol." Gov't Opp'n at 16 (quoting Gov't Mem. in Supp. of Pretrial Det., ECF No. 18, at 5).

Additionally, Mr. Fairlamb's discovery complaints are contradicted by the record. Regarding discovery in general, Mr. Fairlamb was aware of the evidence against him at least since March 2021, when the government filed its memorandum in support of pretrial detention. *See id.* At sentencing, plea counsel recounted the numerous ways he tried to share discovery with Mr. Fairlamb, only to be thwarted by the D.C. Jail. *See* Sent'g Tr. at 24:18–22; 25:1–6. Mr. Fairlamb never expressed any dissatisfaction with his plea counsel's efforts to share discovery. Regarding the specific videos, Mr. Fairlamb used them to his advantage at sentencing. Plea counsel included references to Mr. Fairlamb's assistance in his sentencing memorandum, Def.'s Sent'g Mem. at 5, and during their allocutions both the government and plea counsel mentioned Mr. Fairlamb's actions assisting officers, *see* Sent'g Tr. at 8:25–9:6; 26:16–17. Not only did the Court acknowledge this evidence, the Court commended Mr. Fairlamb for this conduct. *Id.* at 21:17–18.

Thus, Mr. Fairlamb's complaints about discovery do not establish that his plea counsel's performance was deficient or that he suffered any prejudice.

### D. Mr. Fairlamb's Argument About Plea Counsel Failing to Object to the PSR Is Without Merit

Finally, Mr. Fairlamb argues that plea counsel was ineffective by failing to object to portions of the PSR, specifically (1) the official victim enhancement and (2) a typographical error implying that the Sentencing Guidelines were mandatory. *See* Def.'s Mot. at 5–6. The record reflects that plea counsel did not object to the PSR and instead incorporated into his sentencing memorandum the government's correct Guidelines calculation, without the official victim enhancement, and a reference to the Guidelines' advisory nature. Def.'s Sent'g Mem. at 2–3.

While Mr. Fairlamb's allegations and the record gesture toward possible *Strickland* deficiency on plea counsel's part, his claim clearly fails on the prejudice prong because, at sentencing, the Court did not apply either the official victim enhancement or consider the Guidelines as mandatory. This Court expressly agreed with the government, and by extension Mr. Fairlamb's plea counsel, that the official victim enhancement did not apply to Count Two after grouping. *See* Sent'g Tr. at 3:23–4:10. Therefore, Mr. Fairlamb's Guidelines sentence was not incorrectly enhanced on this basis. Moreover, both the plea agreement and statements by this Court at the plea hearing and sentencing amply conveyed that the Sentencing Guidelines are only advisory. *See* Plea Agreement ¶ 5; Plea Hr'g Tr. at 7:5–10 (defendant agreeing with the Court that "after [it] determine[s] what guidelines applies in this case, [the Court] ha[s] authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines"); Sent'g Tr. at 4:21–24 (stating that "with those guideline calculations then the Court would turn to the arguments of counsel in their allocution of the Court's balancing of the factors under [18 U.S.C. §] 3553(a)"); *id.* at 38:11–12 (pronouncing the judgment of the Court "in

consideration of the provisions of 18 U.S.C. Section 3553, as well as the advisory sentencing guidelines"). Thus, Mr. Fairlamb cannot demonstrate that his plea counsel's performance with regards to the PSR caused him prejudice.

*     *     *

Mr. Fairlamb's claims are without merit. Thus, the Court will **DENY** his motion to vacate, set aside, or correct his conviction under 28 U.S.C. § 2255.

## IV.    CERTIFICATE OF APPEALABILITY

Before appealing a final order denying a Section 2255 motion, a court must "issue or deny a certificate of appealability." FED. R. GOVERNING § 2255 PROCEEDINGS 11(a). The defendant may not appeal a final order without this certificate of appealability, which requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). Doing so requires the defendant to demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983) (internal quotation marks omitted)). When a district court denies relief on procedural grounds, the defendant must also show that reasonable jurists would debate "whether the district court was correct in its procedural ruling." *United States v. Baxter*, 761 F.3d 17, 26 n.10 (D.C. Cir. 2014) (quoting *Slack*, 529 U.S. at 484).

Mr. Fairlamb's arguments are without merit. For these reasons, the Court finds that reasonable jurists would not debate whether Mr. Fairlamb's claims deserve encouragement to proceed further. Mr. Fairlamb has not made a substantial showing of the denial of a constitutional

17

right.  The Court will therefore decline to issue a certificate of appealability for Mr. Fairlamb's claims.

### V.    CONCLUSION

For these reasons, the Court concludes that Mr. Fairlamb's motion and the record in his case do not show his entitlement to relief.    No evidentiary hearing is warranted, *see* 28 U.S.C. § 2255(b), and the Court will **DENY** Mr. Fairlamb's motion.    No certificate of appealability shall issue.  A separate Order consistent with this Memorandum Opinion shall issue this date.

SIGNED this  _/s<sup>t</sup>_  day of February, 2023.

                                                     Royce C. Lamberth
                                                     United States District Judge